# IN THE COURT OF APPEALS OF IOWA

No. 22-0144
Filed March 2, 2022

**IN THE INTEREST OF W.S.,**
**Minor Child,**

**S.G., Mother,**
        Appellant.
_____

        Appeal from the Iowa District Court for Linn County, Cynthia S. Finley, District Associate Judge.

        The mother appeals the termination of her parental rights to her child. **AFFIRMED.**

        Kristin L. Denniger, Mount Vernon, for appellant mother.

        Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney General, for appellee State.

        Robin L. Himes, Cedar Rapids, attorney and guardian ad litem for minor child.

        Considered by Tabor, P.J., and Greer and Ahlers, JJ.

**GREER, Judge.**

The juvenile court terminated the mother's parental rights to her child, W.S., born in 2019, pursuant to Iowa Code section 232.116(1)(h) (2021).[1]  The mother appeals; she purports to challenge the statutory ground for termination and argues the loss of her parental rights is not in the child's best interests.

We review termination proceedings de novo.  *In re W.T.*, 967 N.W.2d 315, 322 (Iowa 2021).  Termination of parental rights under chapter 232 follows a three-step process.  *See id.*  But on appeal, we review only the issues raised and briefed by the parent challenging the termination.  *In re A.H.*, No. 21-1189, 2022 WL 246258, at *1 (Iowa Ct. App. Jan. 27, 2022); *see also Hyler v. Garner*, 548 N.W.2d 864, 870 (Iowa 1996) ("We exercise our de novo review only with respect to issues raised and preserved at trial.  Similarly, our review is confined to those propositions relied upon by the appellant for reversal on appeal." (citation omitted)).

The juvenile court terminated the mother's rights under section 232.116(1)(h), which allows the court to terminate when clear and convincing evidence establishes:

> (1) The child is three years of age or younger.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least six months of the last twelve months, or for the last six consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that the child cannot be returned to the custody of the child's parents as provided in section 232.102 at the present time.

---

[1] The father's parental rights were also terminated.  He does not appeal.

The mother concedes the first three elements were proved, but she claims to challenge the fourth element—whether the child could be returned to her care as of the December 6, 2021 termination trial. *See W.T.*, 967 N.W.2d at 322 (interpreting section 232.116(1)(h)(4) as requiring a finding of "whether [the child] could have been placed in [the parent's] custody at the time of the hearing"). We easily conclude the mother's challenge is without merit. First, even on appeal, she does not contend the child could have been immediately returned to her care. And second, the mother cannot realistically make such an assertion, as she was incarcerated at the time of the termination trial. We recognize the mother was granted parole and anticipated being released from prison approximately five weeks after the termination trial—on January 10, 2022 or after—but that fact does not impact whether the child could be returned to the mother as of December 6, 2021. Clear and convincing evidence supports termination under section 232.116(1)(h).

Next, the mother argues termination of her parental rights is not in the child's best interests. In deciding what is in the child's best interests, "the court is required to use the best-interest framework established in section 232.116(2)." *In re P.L.*, 778 N.W.2d 33, 37 (Iowa 2010). Section 232.116(2) mandates that we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." And the defining elements are the child's "safety and [their] need for a permanent home." *In re A.H.*, 950 N.W.2d 27, 39 (Iowa Ct. App. 2020) (alteration in original) (quoting *In re J.E.*, 723 N.W.2d 793, 802 (Iowa 2006) (Cady, J., concurring specially)).

While the mother maintains termination is not in W.S.'s best interests because she is close to being able to reunite with and be a full-time parent to the child, we think the record belies this claim. W.S. came to the attention of the Iowa Department of Human Services (DHS) within months of his birth, after the mother tested positive for methamphetamine in violation of her criminal probation. He was removed from the mother's care in March 2020, when he was about six months old. The mother continued to have issues with drugs and violating her probation, and the State applied to revoke the mother's probation. According to the mother, rather than go to a halfway house, she chose to go to prison—for the more-structured setting and the presumed inability to acquire drugs.

The mother was incarcerated from the fall of 2020 through the date of the termination hearing on December 6, 2021. Due to her incarceration and the COVID-19 pandemic, the mother had limited in-person contact with W.S. for more than a year leading up to the termination hearing. She continued to call W.S.'s caregivers—first the mother's fiancé, then W.S.'s maternal grandparents[2]—but phone calls with the toddler offered minimal impact on his ability to establish a bond with the mother.

At the time of the termination trial, the mother was still in prison. *See* Iowa Code § 232.116(2)(a) (allowing the court, in determining the best interests of the child, to consider "[w]hether the parent's ability to provide [for] the needs of the child is affected by the parent's . . . imprisonment for a felony").[3] She admitted she

---

[2] W.S. was placed with the maternal grandfather and his wife, the step-grandmother.

[3] The mother testified her probation stemmed from a 2016 charge of second-degree theft. Second-degree theft is a class "D" felony. *See* Iowa Code § 714.2(2).

did not share a bond with W.S. because of the limited time they were able to spend together. She testified about her intention to remain sober after being released, but the mother had not been able to participate in any substance-abuse treatment while incarcerated. While we commend her for participating actively in the classes offered by the prison, her prison counselor testified that substance-abuse counseling was not offered. Once she was released, she would be required to obtain a substance-abuse evaluation and then follow through with any recommendations. The mother has yet to show that she will be successful with her quest to remain substance free. Thus, after her release but before she could take on full-time parenting of W.S., she would need to prove she could maintain sobriety outside the structure of prison, comply with all requirements of her parole—so as not to be sent back to prison,[4] and work to build a bond with W.S. so he saw her as an adult he could trust to meet his needs.[5]

With these facts, and recognizing two-year-old W.S. had been out of the mother's care approximately twenty-one months as of the termination trial, we conclude termination of the mother's rights is in W.S.'s best interests. *See In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000) (providing that we must view termination proceedings with urgency after the statutory limitation period lapses). In reaching

---

[4] The mother testified her discharge date for her sentence is not until December 2022.

[5] While the mother does not expressly request additional time to work toward reunification pursuant to Iowa Code section 232.104(2)(b), she "requests the opportunity to demonstrate the changes she has already put into place for her child." For these same reasons, we conclude it is unlikely the mother could resume parenting W.S. within six months, so additional time is not warranted. *See* Iowa Code § 232.104(2)(b) (allowing for an extension when the court determines "that the need for removal will no longer exist at the end of the additional six-month period.")

this conclusion, we note that W.S. is strongly bonded with the maternal grandparents, with whom he had been living with for nearly one year. They were working toward becoming licensed foster parents and had expressed their intention to adopt him. *See* Iowa Code § 232.116(2)(b)(1). They can provide W.S. a safe, stable home, which the child needs and deserves.

**AFFIRMED.**